BORIS FELDMAN, State Bar No. 128838
DYLAN J. LIDDIARD, State Bar No. 203055
DOMINIQUE C. ALEPIN, State Bar No. 241648
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: boris.feldman@wsgr.com;
dliddiard@wsgr.com; dalepin@wsgr.com

Attorneys for Defendant
Bazaarvoice, Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> BAZAARVOICE, INC. <br><br> *Defendant*. | Case No. 13-cv-00133 EMC <br><br> **JOINT CASE MANAGEMENT STATEMENT, DISCOVERY PLAN AND [PROPOSED] ORDER** <br><br> Date: February 14, 2013 <br> Time: 9:00 a.m. <br> Judge: Hon. Edward M. Chen |

The United States of America ("Plaintiff") and Bazaarvoice, Inc. ("Defendant") jointly submit this **JOINT CASE MANAGEMENT STATEMENT, DISCOVERY PLAN AND [PROPOSED ORDER]** pursuant to the Standing Order for All Judges of the Northern District of California dated November 27, 2012 and Civil Local Rule 16-9. Pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure and Civil Local Rule 16-10(b), the parties respectfully request that the Court adopt the non-disputed provisions of this Order as the Case Management Order in this case and, as to disputed provisions (indicated herein in italics), request that the Court determine which of the conflicting provisions suggested by each side should be included in the final Order.

### 1.  Jurisdiction and Service

The basis for the Court's subject matter jurisdiction is Section 15 of the Clayton Act, 15 U.S.C. §§ 4 and 25, as well as 28 U.S.C. §§ 1345, 1331, and 1337.  The Court has personal jurisdiction over the defendant and venue is proper in this Court.  Defendant has accepted service of the Complaint and has waived service of summons.  No parties remain to be served.

### 2.  Factual and Legal Issues

#### Plaintiff's Position

Bazaarvoice is a provider of product ratings and reviews platforms ("PRR platforms"), which are used by retailers and manufacturers to collect, organize, and display consumer-generated product ratings and reviews online.  Consumer-generated ratings and reviews are online feedback from consumers regarding their experiences with products they have purchased. Ratings and reviews are a valuable asset for retailers and manufacturers to feature on their websites because they tend to increase sales, decrease product returns, and provide valuable information regarding consumer sentiment.  Consumers find ratings and reviews useful because the experiences of prior consumers may assist them in making an informed purchasing decision.

On June 12, 2012, Bazaarvoice acquired its closest competitor, PowerReviews, Inc. ("PowerReviews").  Prior to the acquisition, prospective customers routinely played Bazaarvoice and PowerReviews against each other during negotiations.  PowerReviews positioned itself as a low-price alternative to Bazaarvoice and aggressively pursued Bazaarvoice's largest clients.  As a result of price competition between Bazaarvoice and PowerReviews, many manufacturers and retailers obtained substantial discounts.

Plaintiff contends that Bazaarvoice's acquisition of PowerReviews violates Section 7 of the Clayton Act, which prohibits transactions "where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  Congress intended Section 7 to be "a prophylactic measure, intended 'primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their

1   evil . . . .'"  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) (quoting

2   *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 597 (1957)).  Accordingly,

3   Section 7 can be violated, even if the challenged acquisition has not yet caused any

4   anticompetitive effects, as long as such effects are "reasonably probable."  *FTC v. Warner*

5   *Communications, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984) ("It is well established that a section

6   7 violation is proven upon a showing of reasonable probability of anticompetitive effect."); *see*

7   *also Brown Shoe Co. v. United States*, 370 U.S. 294, 332 (1962) (A merger violates Section 7 of

8   the Clayton Act "if there is a reasonable probability that the merger will substantially lessen

9   competition.").  Bazaarvoice's acquisition of PowerReviews is reasonably likely to result in

10  significant anticompetitive effects because the transaction eliminated Bazaarvoice's most

11  significant rival and extinguished long-standing price competition between Bazaarvoice and

12  PowerReviews.  Without continued competitive pressure from PowerReviews, Bazaarvoice will

13  be able to significantly increase what it charges customers for its PRR platform, harming many

14  retailers and manufacturers.

15      **Defendant's Position**

16      **Overview**.  Plaintiff does not (because it cannot) allege that Bazaarvoice's July 2012

17  acquisition of PowerReviews – a company whose annual revenues were below $12 million – has

18  actually lessened competition in any relevant market.  *United States v. Syufy Enters.*, 903 F.2d

19  659, 665-66 (9th Cir. 1990).  Nor has Plaintiff alleged a cognizable product or geographic

20  market, market shares, or meaningful barriers to entry.  Since the acquisition seven months ago,

21  there has been substantial competitor repositioning and entry and intense competition on price

22  and innovation.  PowerReviews customers have also received tangible benefits from the

23  transaction.  In the teeth of continued stiff competition, Plaintiff rests its entire case on dated,

24  superseded documents and predictions that bear no resemblance to marketplace realities.  In a

25  consummated merger, however, such speculations cannot overcome what the marketplace

26  already has shown: that customers have many choices to which they can turn in this dynamic,

27  vibrant market sector.

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 3
CASE NO. 13-CV-00133-EMC

**(1) Market Concentration**.  To make out a prima facie case that a transaction will harm competition, the plaintiff must allege the market shares of the merging parties and market concentration levels as reflected in the Herfindahl–Hirschmann Index.  *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1110 (N.D. Cal. 2004).  In this case, Plaintiff has not alleged market shares or market concentrations and is therefore not entitled to any such presumption.

**(2) Product market definition**.  The relevant product is commonly defined by determining "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Id.* at 1119.  Plaintiff alleges that the relevant product market is product ratings and reviews platforms ("PRRP") used by retailers and manufacturers.  Compl. ¶ 30.  However this seemingly simple one size fits all definition is undercut by allegations that the market is highly differentiated with varying customer demands.  PRRP range from simple to multi-featured, "sophisticated commercial platforms."  *Id.* ¶ 18.  PRRP can be supplied by third parties or built by customers in-house.  *Id.*  The customers themselves are as varied as the product range, demanding simple solutions, complex multi-featured solutions, and everything in between.  *Id.* ¶¶ 27-29.

These allegations mirror prior cases brought by the Department of Justice involving alleged differentiated product markets and customers.  In those cases, DOJ failed to show that there were "a substantial number of customers for whom there are no competitive alternatives."  *United States v. Sungard Data Sys., Inc.*, 172 F. Supp. 2d 172, 190 (D.D.C. 2001); *Oracle*, 331 F. Supp. 2d at 1172 (entering judgment in favor of defendant where plaintiffs "failed to prove that there are a significant number of customers [] who regard Oracle and PeopleSoft as their first and second choices").  Here, Plaintiff dismisses rival suppliers as "not sufficiently close substitutes" and in-house solutions as "impractical and cost-prohibitive" for "many" customers.  Compl. ¶¶ 34, 37.  However, as in *Oracle* and *Sungard*, Plaintiff does not quantify the portion of the relevant market comprised of customers who cannot use rival or in-house solutions.

Plaintiff's hypothesized PRRP product market is also unsustainably narrow.  For example, it excludes significant solutions that serve the same purposes as ratings and reviews.

These solutions include software that allows users to comment, offer testimonials, participate in online forums, or ask questions and receive answers about products.  The definition also excludes solutions that integrate Facebook features such as "posts" and "likes" that users share with their friends and can be shown on a website to market products.  Finally, the definition excludes providers of ratings and reviews technology used in other industry verticals such as travel, restaurants, and local businesses.  Plaintiff has not alleged any facts why these software tools and industry verticals should be excluded from the relevant market.

**(3) Geographic market definition**.  "[T]he proper geographic market is 'that geographic area to which consumers can practically turn for alternative sources of the product.'" *California v. Sutter Health Sys.*, 84 F. Supp. 2d 1057, 1068 (N.D. Cal. 2000).  Plaintiff's proposed geographic market is improperly limited to the United States.  Plaintiff makes no allegations why U.S. customers could not turn to foreign firms.  In fact they have:  immediately after the merger, Reevoo, a formidable Bazaarvoice competitor based in the UK, opened a U.S. office and won customers while competing against Bazaarvoice.

**(4) No meaningful barriers to entry**.  Plaintiff must also show that "new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the [defendant's] high price." *Church & Dwight Co. v. Mayer Labs., Inc.*, 868 F. Supp. 2d 876, 898 (N.D. Cal. 2012).  Plaintiff does not allege any of the usual barriers to entry such as intellectual property, access to essential inputs, or sunk costs.  *See* ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS (7th ed. 2012), at 361-62.  To the contrary, the fact that websites choose to develop their own ratings and reviews in-house demonstrates the ease of entry.  Moreover, Plaintiff alleges no facts to explain why large firms such as Oracle and IBM could not easily add ratings and reviews to their existing platforms.  Similarly, Plaintiff alleges no facts showing why existing PRRP providers could not add features and functionality to their platforms to match what PowerReviews offered.  The legal question is whether the market can replicate the competition previously offered by PowerReviews – not Bazaarvoice as it exists today.  *Oracle*, 331 F. Supp. 2d at 1117-18 (DOJ failed to show that

repositioning by other firms was unlikely).  Plaintiff has alleged no facts that would prevent repositioning or new entry to take the place of PowerReviews.

Although Plaintiff contends that Bazaarvoice's syndication of ratings and reviews is a "barrier" to entry, Plaintiff ignores that PowerReviews was able to compete with barely any syndication capability.  The Complaint alleges no facts as to why syndication capability could not be developed by other existing competitors.  Plaintiff also ignores that many customers affirmatively choose not to syndicate their content or receive syndicated content.

**(5) No anticompetitive effects**.  In the case of a consummated merger such as this one, there can be no antitrust liability where the post-merger evidence demonstrates no actual lessening of competition.  *Syufy Enters.*, 903 F.2d at 665 (government's request for divestiture denied because new entrant competed effectively post-merger).  Since the merger closed in July 2012, *none* of the anticompetitive outcomes envisioned by Plaintiff has come to pass.  Plaintiff makes no allegation that prices have in fact gone up or that innovation has slowed following the merger.  Bazaarvoice continues to invest to improve its own and legacy-PowerReviews' products.  Far from harming competition, marrying Bazaarvoice with PowerReviews has benefitted customers with increased functionality, better sales support, and the promise of a more complete product roadmap.

**Conclusion**.  Plaintiff's case is based on dated documents that describe past competition between Bazaarvoice and PowerReviews, characterizing the transaction as seeking to "[e]liminate [Bazarvoice's] primary competitor," provide "relief from [] price erosion," and "tak[e] out [Bazarvoice's] only competitor."  Compl. ¶¶ 3, 4, 5.  But the forward-looking inferences Plaintiff seeks to draw from these documents are not supported by what has actually taken place since the time of the acquisition.  Bazaarvoice intends to show that customers large and small do not believe they are constrained to absorb anticompetitive price increases (or reduced quality) from Bazaarvoice.  In this dynamic marketplace that is still in its infancy, the evidence will show that competition continues to flourish, and that the acquisition has only helped, not harmed, customers.

### 3. Legal Issues

See above.

### 4. Motions

There has been no motions practice and there are no pending motions.  It is too early to say whether any party will file any motions in the future.

### 5. Amendment of Pleadings

Plaintiff does not intend to amend its pleading at this time.  Defendant has not yet responded to the complaint.

### 6. Evidence Preservation

The parties have met and conferred concerning the preservation and production of electronically stored information ("ESI").  In a September 21, 2012 letter agreement, the parties agreed, and it is hereby ordered, that neither party is required to preserve or produce in discovery the following categories of information, some of which is ESI:

(1)   voicemail messages, except where they are contained within the Bazaarvoice, Inc., PowerReviews, Inc., or Department of Justice e-mail systems;

(2)   e-mail or other electronic messages sent to or from a personal digital assistant or smartphone (e.g., Blackberry handheld), provided that a copy of such e-mail or message is routinely saved and preserved elsewhere;

(3)   other electronic data stored on a personal digital assistant or smartphone, such as calendar or contact data or notes, provided that a copy of such information is routinely saved and preserved elsewhere;

(4)   temporary or cache files, including Internet history, web browser cache, and cookie files, wherever located;

(5)   server, system, or network logs;

(6)   documents sent solely between outside counsel for Bazaarvoice, Inc. or PowerReviews, Inc. (or persons employed by or acting on behalf of such counsel)

or solely between counsel for the United States (or persons employed by the United States Department of Justice);

(7)   documents that were not directly or indirectly furnished to any person outside of Bazaarvoice, Inc.'s or PowerReviews, Inc.'s respective legal departments or outside counsel, such as internal memoranda, authored by Bazaarvoice, Inc.'s or PowerReviews, Inc.'s counsel; and

(8)   documents that were not directly or indirectly furnished to any third party, such as internal memoranda, authored by counsel for the United States.

**7.  Disclosures**

The parties will exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a) **within fourteen (14) calendar days following the entry of a protective order** by the Court.

In addition to the required disclosures under Fed. R. Civ. P. 26(a), the parties will make the following productions:

a.   Within **fourteen (14) calendar days** of the entry of a protective order, Plaintiff shall produce to Defendant all correspondence, documents, data, oral examination transcripts, depositions or any other materials and statements, declaration, affidavits, whether in hard-copy or electronic form, exchanged between Plaintiff and any non-party in the course of Plaintiff's investigation into Defendant's acquisition of PowerReviews (collectively, "Investigation Materials").  Plaintiff shall produce all Investigation Materials, regardless of whether those materials were produced voluntarily or through compulsory process, such as a subpoena or Civil Investigative Demand.  Plaintiff is not required to produce back to Defendant documents or other materials that it originally received from the Defendant during the course of the investigation. Plaintiff shall produce all ESI in accordance with this Order.  This paragraph shall not be construed to require the production of Plaintiff's attorney work

product, confidential attorney-client communications, or materials subject to the deliberative process privilege or any other governmental privilege.

b.   Within **fourteen (14) calendar days** of the entry of a protective order, Defendant shall produce to Plaintiff copies of all correspondence, documents, data, oral examination transcripts, depositions or any other materials and statements, declarations, affidavits, whether in hard-copy or electronic form that were exchanged between Defendant and any third-party not working for or on behalf of Defendant or its outside counsel in the course of responding to Plaintiff's investigation into Defendant's acquisition of PowerReviews (collectively, "Defendant's Investigation Materials").  Defendant shall produce Defendant's Investigation Materials regardless of whether these materials were produced voluntarily or through compulsory process. Defendant shall produce all ESI in accordance with this Order.  Defendant is not required to produce documents or other written materials originally received from the Plaintiff.  This paragraph shall not be construed to require the production of Defendant's attorney work product, confidential attorney-client communications, or materials subject to the deliberative process privilege or any other privilege.

c.   Within **fourteen (14) calendar days** of the entry of a protective order, Defendant shall produce all materials first identified in the September 21, 2012 letter agreement between the parties that were later requested by the Plaintiff in a December 20, 2012 letter addressed to counsel for Bazaarvoice except materials requested from any member of the board of directors of Bazaarvoice or PowerReviews.

***Areas of Disagreement**

<u>*Plaintiff's Position*</u>

**a.      Supplemental Exchange of Disclosures.** *On* <u>**May 1 2013**</u>*, the parties shall exchange any modifications or supplements to their disclosures*

**b.      Privilege Log.** *Defendant shall produce a privilege log for materials withheld from the production referenced in this section and any productions made during the Investigation.*

**c.      Additional Disclosures.** *Within fourteen (14) days of the entry of a protective order, Defendant shall produce the data used to create the charts on pages 23, 65, and 81 of the white paper that counsel for Bazaarvoice submitted to the Department of Justice on December 5, 2012.*

<u>*Defendant's Position*</u>

**a.      Supplemental Exchange of Disclosures.** *Defendant proposes that, in addition to the disclosures agreed upon above, the parties also exchange disclosures on* <u>**March 1, 2013, April 1, 2013 and May 1, 2013**</u>. *Given the expedited nature of this case, and the desire by both sides to avoid a "trial by surprise," Defendant believes such exchange will help avoid conducting the majority of discovery just before its close, and assist the parties in efficiently managing discovery and keeping with the proposed schedule.  In addition, Defendant proposes that the parties draft their disclosures in good faith, identifying those documents and witnesses they hope to present at trial.*

**b.      Materials Requested during the Investigation: Privilege Log and Data.**

*Defendant has agreed to provide Plaintiff some materials (specified above) that were requested and not provided during the Investigation* <u>*that are readily accessible to it*</u>*.  It is providing these materials in an effort to move this case along at the outset.*

*But Plaintiff makes additional demands for items that are not readily accessible and will take additional time and cost to prepare and provide.  Those demands include a privilege log and data compilations.  Plaintiff is without any legal foundation for making such requests.*

*Plaintiff has yet to serve any document requests.  As such there is no basis for asking that this Court order Defendant turn such materials over.  If Plaintiff desires these materials, it may seek them in a document request during discovery.  Defendant thus asks that the Court deny Plaintiff's request that Defendant produce these additional materials.*

**8.  Discovery**

**Status of Discovery**.  The parties have satisfied their meet and confer obligations under Federal Rule of Civil Procedure 26(f).  To date, there has been no discovery propounded.  The parties are negotiating a proposed protective order governing the production and use of confidential information.

**Production of Documents and ESI**.  The parties shall produce all documents and ESI in accordance with the Department of Justice's Standard Specifications for Production of ESI, except when producing documents and ESI received from non-parties.  The parties shall produce all documents and ESI received from non-parties in the same manner and format in which the materials were originally produced by the non-party.  Should either party issue any document subpoena on non-parties, the instructions in that subpoena shall conform with the above instructions on ESI.

**Protective Order**.  The parties are negotiating a protective order that will govern the production and use of confidential information in this case.

**Proposed Discovery Plan.**  The parties have met and conferred regarding a proposed discovery plan and have been able to agree on some items.  However, there are also items where the parties disagree.

***Areas of Disagreement**

*Plaintiff's Position*

a.        **Non-Party Document Subpoenas.**  *Balancing the burdens of third-party discovery against the likely benefits given the needs of the case, the schedule of the litigation, the resources of the parties and the desire to avoid gamesmanship and surprise at trial, Plaintiff*

1   *proposes, in accordance with Rule 26(b)(2)(C)(iii), that the parties each be limited to serving*

2   *thirty (30) document subpoenas on non-parties.*

3        b.    ***Extended Deposition Time for Defendant's Employees.*** *Because discoverable*

4   *information regarding defendant's business, the industry and the background and details of the*

5   *challenged transaction are concentrated with certain executives employed by defendant (to*

6   *which defendant has unlimited access and plaintiff has no access outside of discovery), and in*

7   *order to avoid piecemeal requests to the Court, Plaintiff proposes that it have the right to extend*

8   *three depositions of current Bazaarvoice employees to up to fourteen hours, if necessary. An*

9   *overall limit on the number of deposition hours (which would not be altered by this provision)*

10  *will address concerns that this provision might allow for the unwarranted extension of a*

11  *deposition for purposes of harassment.*

12       c.    ***Number of Depositions of Defendant and Non-Parties.*** *Plaintiff proposes that it*

13  *be permitted up to 80 hours of deposition for current employees of Bazaarvoice and that each*

14  *side be limited to 90 hours of deposition from non-parties. This limit would not apply to*

15  *depositions necessary merely to establish admissibility or authenticity of documents, depositions*

16  *of persons who sign declarations or affidavits regarding factual merits, and depositions of*

17  *persons appearing on the opposing party's witness list who had not otherwise been deposed.*

18       d.    ***Investigation Deposition of Bazaarvoice (Alan Godfrey).*** *Plaintiff proposes that*

19  *it be permitted to use the deposition of Bazaarvoice taken during Plaintiff's investigation*

20  *through defendant employee Alan Godfrey) for all purposes for which party depositions may be*

21  *used under Rule 32 of the Federal Rules of Civil Procedure. The deposition was defended by*

22  *counsel for Defendant.*

23       e.    ***Privilege Log.*** *Plaintiff proposes that the defendant be required to produce a full*

24  *privilege log for all documents withheld from production. Plaintiff further proposes that neither*

25  *party be required to log communications among outside counsel or Department of Justice*

26  *counsel or communications created after commencement of the investigation on June 14, 2012*

27  *with outside counsel or between counsel solely concerning this litigation or the investigation.*

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 12
CASE NO. 13-CV-00133-EMC

<u>*Defendant's Position*</u>

*Plaintiff's request to limit discovery of non-parties by Defendant and to limit the Court's hearing of evidence from relevant witnesses at trial – customers and competitors – stymies the discovery and presentation of evidence that go to the heart of this case.  Defendant would be severely prejudiced in its defense and we respectfully submit that the Court would be denied a full and complete record.   This is true for three reasons.*

***First***, *Plaintiff's Complaint alleges the acquisition has had anticompetitive effects in the alleged market for ratings and review platforms.  Under Plaintiff's theory, those effects must have been felt by the multitude of manufacturer, brand and retail websites who purchase ratings and reviews software.  In order to determine whether these customers have, in fact, been injured by the merger requires discovery of them.  Defendant believes that purchasers of ratings and reviews software have not been injured, but the only way it can defend itself and present this evidence to the Court is to have sufficient opportunity to obtain documents and testimony.*

***Second***, *as noted above, Defendant will present at trial evidence that it does not possess market power, the relevant market is much broader than simply ratings and reviews platforms, and that it faces significant competition regardless of how the product and geographic markets are defined.  In demonstrating these key points, it will need to survey many competitors and customers across many domains.  Defendant should not be crippled in being able to present this evidence merely because Plaintiff would like to impose artificial limits on Defendant's ability to take discovery.*

***Finally***, *Plaintiff comes into this litigation with a head start.  Plaintiff investigated the acquisition for over six months, during which time it had the ability to compel documents and testimony from non-parties.  Defendant had no such power.  Limiting Defendant's ability to seek adequate non-party discovery would handicap and prejudice Defendant out of the gate.*

*a.      **Non-Party Document Subpoenas.**  As noted above, given the nature of this case and the fact that the evidence Defendant will present at trial will come from non-party competitors and customers, Defendant believes that there should be **no limit** on the number of*

*document subpoenas served on non-parties  However, mindful of the potential burden to non-parties, the parties, and the Court, Defendant will be efficient and judicious and pursue discovery only in good faith.*

*b.  **Extended Deposition Time for Defendant's Employees.**  Defendant does not believe that Plaintiff, at the outset of this case, should be able to depose unspecified employees of Defendant beyond the seven hours allotted under the Federal Rules.  Plaintiff has not identified which employees they would like to depose for more than seven hours, or what "good cause" they have to extend those depositions.  Defendant proposes that if Plaintiff wishes to extend the time of any deposition, it request such relief from the Court at the time the deposition is noticed, upon demonstration of good cause.*

*c.  **Number of Depositions of Defendant and Non-Parties.**  As explained above, non-party discovery is crucial to Defendant's ability to defend itself in this case (and also Plaintiff's burden of proof in establishing liability).  Thus, Defendant proposes that each side be permitted **one hundred seventy (170) hours** of deposition testimony from party and non-party witnesses.*

*d.  **Investigation Deposition of Bazaarvoice (Alan Godfrey).**  Defendant proposes that Plaintiff not be permitted to use the deposition of Alan Godfrey taken during the investigation for all purposes for which party depositions may be used under Rule 32 of the Federal Rules of Civil Procedure.*

*Mr. Godfrey was deposed in response to Plaintiff's request for testimony from Bazaarvoice pursuant to 15 U.S.C. §§ 1311-14 on the topic of Bazaarvoice's integration of PowerReviews following the acquisition.  On more than one occasion, counsel for Defendant objected to questioning beyond the integration related topics, but Mr. Godfrey was directed to answer.  It is also important to note that the objections available to Defendant at that deposition were far more limited than those provided under the Federal Rules of Civil Procedure.*

*Defendant would be more than happy to present Mr. Godfrey for another deposition.*

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 14
CASE NO. 13-CV-00133-EMC

e.   ***Privilege Log.***  *Given the expedited nature of this schedule, and in light of the fact that Plaintiff may request even more voluminous records from Defendant (beyond the extensive investigation production), Defendant believes that it should not be forced to provide a document-by-document privilege log.  A full privilege log would require hundreds, if not thousands, of hours to produce in such a short time frame and would impose an undue burden on Defendant. It is important to note that Plaintiff will not be similarly burdened.  And any additional information to be gleaned from an itemized log would provide no additional benefit to Plaintiff in this case.  Plaintiff has not presented any reason why a full privilege log is necessary, other than to state that, because other parties have over-designated privileged materials, Defendant will do the same.  Such unwarranted speculation is not a reason to impose an undue burden on Defendant.*

*Defendant proposes that, for any documents withheld from production, it produce a* **categorical privilege log** *that would identify the categories of document withheld, the number of documents withheld in that category, the basis for withholding (attorney-client communication, work product, etc.), the time period encompassed by the withheld documents, and a list of the individuals who were authors or addressees or were copied on the documents.  Such categorical logs have been upheld in cases with similar extenuating circumstances, and would provide sufficient ability for Plaintiff to probe Defendant's assertions of privilege.  See, e.g., Orbit One Commc'ns, Inc. v. Numerex Corp., 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (approving a categorical log); SEC v. Thrasher, No. 92 CIV 6987 (JFK), 1996 WL 125661, at \*1-2 (S.D.N.Y. 1996 ) (same); CC Aventura, Inc. v. Weitz Co., LLC, No. 06-21598-CIV, 2008 WL 828117, at \*5 (S.D. Fla. Mar. 27, 2008) (same).  Indeed, a categorical privilege log was recently ordered by Magistrate Judge Grewal in Vasudevan Software, Inc. v. Microstrategy, No. 11-cv-06637-RS-PSG, 2012 WL 5637611, at \*7 (N.D. Cal. Nov. 15, 2012) (approving use of categorical privilege log).*

*Defendant does not oppose Plaintiff's proposal that neither party be required to log communications among outside counsel or Department of Justice counsel or communications*

1   *created after commencement of the investigation on June 14, 2012 with outside counsel or*

2   *between counsel solely concerning this litigation or the investigation.*

3        ***\*\*\*Joint Proposals:***

4        **Written Discovery.** Due to the expedited nature of this proceeding, Plaintiff and

5   Defendant shall prepare and serve written responses to written discovery requests within **ten (10)**

6   **business days** of service by the opposing side. The parties shall serve no more than **thirty-five**

7   **(35)** document requests on the opposing party. The parties shall serve no more than **thirty-five**

8   **(35)** interrogatories on the opposing party. The parties shall serve no more than **thirty-five (35)**

9   requests for admission on the opposing party. All document requests must be served by **May 3,**

10  **2013** and all other written discovery requests must be served by **May 17, 2013**.

11       **Depositions.** For any given deposition, the parties and any affected non-party may

12  stipulate to additional time beyond the seven hours on the record provided by the Federal Rules

13  of Civil Procedure. Absent agreement of the parties, the length of depositions provided for in

14  this Order may only be modified by order of the Court for good cause shown.

15       **Non-party Discovery.** Parties shall request that non-parties simultaneously produce

16  materials to both the Plaintiff and the Defendant, regardless of which party sought the materials.

17  If, notwithstanding such request, the non-party did not produce copies to both sides, the issuing

18  party will provide a copy of all materials produced to the other side within **two (2) business days**

19  after receipt of the materials from the non-party. Any party that does not have access to

20  materials provided by a non-party in response to a subpoena issued pursuant to Fed. R. Civ. P. 45

21  for at least **one (1) business day** before any deposition in which the materials will be used as

22  exhibits may elect to have the deposition postponed until the party has had access to the

23  materials for at least one business day.

24       If a party modifies or explains a Rule 45 document request or extends the time to respond

25  in writing, it shall simultaneously provide that written extension, modification or explanation to

26  the opposing party. Any oral modifications or extensions of time by a party to a non-party must

27

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 16
CASE NO. 13-CV-00133-EMC

be conveyed to the opposing side as soon as practicable but in any event no later than **one (1) business day** after such modification or extension is granted.

**Discovery of Expert Related Materials**.  In accordance with the September 21, 2012 letter agreement between the parties and by further agreement by the parties, neither Plaintiff nor Defendant are required to preserve or produce in discovery the following documents:

a.  any form of oral or written communications or correspondence between (1) counsel and expert witnesses; (2) counsel and expert witness' staff; (3) expert witnesses and their respective staff; (4) expert witnesses and other expert witnesses; (5) employees of Defendant or Plaintiff and expert witnesses; or (6) employees of Defendant or Plaintiff and expert witness' staff;

b.  notes, drafts, written communications data formulations, data runs, or any database-related operations or other types of preliminary work created by, or for, expert witnesses or their staff.  The protections against discovery contained in this paragraph shall not apply to any communications or documents upon which an expert relief as a basis for any of his or her opinions or reports.

**Electronic Service**:  The parties agree to serve documents, including pleadings, discovery requests, and trial materials, on each other through e-mail, except to the extent that transmission of any such documents electronically is impractical, in which event service shall be made by hand or through overnight delivery.  Service by e-mail shall be considered the same as service by hand.  The parties shall serve each other with copies of all third-party discovery related materials (including but not limited to every third-party subpoena for documents and/or testimony) as soon as is practical but in no event later than **one (1) business day** after service on the third-party unless good cause is shown.  For service to be effective, it should be served on the counsel for both parties identified below:

Plaintiff: Peter Huston, Michael Bonanno, Adam Severt

Defendant: Chul Pak, Dylan Liddiard, Dominique-Chantale Alepin

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 17
CASE NO. 13-CV-00133-EMC

1    **Declarations**.  Both parties shall have a continuing obligation to produce any declarations

2    of any non-party obtained during the investigation or during the course of discovery.  Absent good

3    cause, all such declarations of non-parties a party has obtained must be produced no later than

4    **April 20, 2013.**

5        **9.  Class Actions**

6        This is not a class action.

7        **10. Related Cases**

8        There are no related cases.

9        **11. Relief**

10       Plaintiff requests that:

11       (1)      Bazaarvoice's acquisition of PowerReviews be adjudged to violate Section 7 of

12                the Clayton Act, 15 U.S.C. § 18;

13       (2)      the Court to order Bazaarvoice to divest assets, whether possessed originally by

14                PowerReviews, Bazaarvoice, or both, sufficient to create a separate, distinct and

15                viable competing business that can replace PowerReviews' competitive

16                significance in the marketplace;

17       (3)      the United States be awarded the costs of this action; and

18       (4)      the United States be awarded any other equitable relief the Court deems just and

19                proper.

20       **12. Settlement and ADR**

21       Pursuant to the Local Rules, the parties have reviewed the ADR Handbook, discussed it

22   with their counsel, and come to the conclusion that they would not like to proceed with ADR.

23   On January 29, 2013, the parties filed a "Notice of Need for ADR Conference."  The ADR

24   Conference is scheduled for February 11, 2013.

25       **13. Consent to Magistrate Judge for All Purposes**

26       The parties have declined to proceed before a Magistrate Judge for all purposes.

27

28
JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 18
CASE NO. 13-CV-00133-EMC

**14. Other References**

The parties do not believe that this case is suitable for reference to binding arbitration, special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

At this time, the parties do not believe that it is possible to narrow the issues in this case.

**16. Expedited Trial Procedure**

The parties agree that this case merits an expedited trial and pre-trial schedule.  However, the parties decline to proceed under General Order 64.  Instead the parties have requested that the Court enter this Order to establish an expedited schedule in this matter.   The parties jointly request that this matter be tried to the Court commencing on **July 22, 2013** or as soon thereafter as the Court is available.  The deadlines set forth below are premised on a **July 22, 2013** trial date.

**17. Scheduling**

*\*\*\*Areas of Disagreement*

*Plaintiff's Position*

**a.       Trial Witness List.  *In order to insure that the parties have an adequate opportunity to depose trial witnesses and to avoid unnecessary expenditure of resources and surprise at trial, Plaintiff proposes that the parties exchange witness lists on May3, 2013 in advance of the fact discovery cutoff and that the number of trial witnesses be limited to fifteen fact witnesses and three expert witnesses per side.*

*Defendant's Position*

**a.       Trial Witness List.  *As described above, evidence, including live testimony from non-parties, will be crucial to Defendant's ability to defend itself at trial (and Plaintiff's burden of proof).  In addition, given the early stage of this case, Defendant believes it is too soon to limit the number of witnesses that will appear live at trial.  Defendant therefore proposes that, for the time being, there be **no limit** on the number of live trial witnesses.  Defendant proposes that the parties shall exchange witness lists for trial on **June 21, 2013**, and, that, absent good cause, all witnesses*

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 19
CASE NO. 13-CV-00133-EMC

on a party's witness list shall have been identified as part of the party's disclosures exchanged on or before **May 1, 2013**.

    \*\*\*_Joint Proposals._

    **Answer**. Defendant shall answer the Complaint within **three (3) business days** of entry of this Order.

    **Fact Discovery.** Fact discovery shall be completed by **May 24, 2013**.

    **Identification of Experts.** The parties shall identify any expert(s) that they plan to call in their case-in-chief no later than **May 3, 2013**. The parties shall identify any rebuttal experts by **May 21, 2013**.

    **Expert Reports**. Each party's expert reports shall conform to Fed. R. Civ. P. 26(a)(2). The expert reports shall contain all opinions held by the expert as of the date written. The parties shall serve any report(s) by **June 3, 2013**. The Parties shall serve any rebuttal reports **three calendar weeks** after receipt of the underlying report that is addressed by the rebuttal report.

    **Expert Witness Disclosures and Depositions.** Expert-related discovery will be governed by Fed. R. Civ. P. 26, except as modified by this Order.

    **Expert Witness Depositions.** Depositions of experts shall be completed by **July 19, 2013**.

    **Deposition Designations.** The parties shall exchange (page and line number) designations of deposition testimony to be offered at trial no later than **June 3, 2013**. Each party must provide counter designations of deposition testimony no later than **June 14, 2013**. Objections to designations or counter designations shall be exchanged no later than **June 21, 2013**.

    **Exhibit Lists.** Absent good cause, all documents appearing on a party's exhibit list must have been produced to all parties prior to **June 3, 2013**. No later than **June 14, 2013**, the parties will exchange lists of exhibits that the parties anticipate introducing at trial as well as a marked set of these exhibits. Exhibit lists will be compiled in an agreed-upon electronic format capable of being sorted by exhibit number, chronological order, and Bates-stamped alphabetical and numerical order. The parties will endeavor to agree upon a reasonable limit on the number of trial

exhibits that may be designated by each side.  The parties will exchange objections to the exhibits to be offered by the opposing side no later than **June 21, 2013**.  Exhibit lists need not include exhibits used solely for purposes of impeachment or rebuttal.  The parties will endeavor to resolve any objections regarding the authenticity or admissibility of exhibits (including demonstratives and those used during cross-examination or rebuttal) in advance of the final pretrial conference.

**Demonstrative Exhibits.**  Demonstrative exhibits do not need to be included on exhibit lists, but unless otherwise agreed or ordered, need to be served on all counsel of record at least 48 hours before any such exhibit may be introduced, or otherwise used, at trial as part of the direct examination of any witness.

**Pretrial Meet and Confer.**  Lead counsel who will try the case shall meet and confer on **June 7, 2013** concerning the items outlined in the Court's Civil Pretrial Instructions.

**Joint Pretrial Conference Statement.**  The parties shall file a joint pretrial conference statement in accordance with this Court's Pre-Trial Standing Order no later than **June 24, 2013**.

**Motions *in Limine*.**  Pursuant to the Court's Pre-Trial Standing Order, motions *in limine* shall be served, but not filed, by **June 13, 2013**.  Oppositions to any motions *in limine* shall be served, but not filed, by **June 20, 2013**.  The moving party shall collate the motion and opposition and file paired sets by **June 24 2013**.

**Trial Briefs.**  The parties shall submit trial briefs no later than **June 24, 2013**.  Trial briefs shall not exceed **thirty (30)** pages.

**Final Pre-trial Conference.**  The final pre-trial conference shall be held on **July 9, 2013**.

**Trial Date.**  The bench trial in this action shall begin on **July 22, 2013**.

**Post-Trial Briefs and Proposed Findings of Fact and Conclusions of Law.**  Although the parties recognize that this Court's Pre-Trial Standing Order contemplates that proposed findings of fact and conclusions of law be submitted before trial, the parties believe that, given the nature of this case and the evidence that will be presented, it will be more helpful to be submitted after trial.  Similarly, the parties would like the opportunity to present post-trial briefs after trial.

1    The parties therefore propose that they submit proposed findings of fact and conclusions of law

2    and post-trial briefs **fifteen (15) business days following the close of trial**.

3         **18. Trial**

4         The parties estimate that the bench trial in this action will take approximately **twenty**

5    **court days**.

6         **19. Disclosure of Non-Party Interested Entities or Persons**

7         On January 15, 2013, Defendant filed its "Certification of Interested Entities or Persons"

8    required by Civil Local Rule 3-16.

9         Pursuant to Civil L.R. 3-16, Defendant certifies that the below listed persons, associations

10   of persons, firms, partnerships, corporations (including parent corporations), or other entities

11   may (i) have a financial interest in the subject matter in controversy or in a party to the

12   proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

13   substantially affected by the outcome of this proceeding by virtue of their having some form of

14   beneficial ownership of five percent or more of Bazaarvoice's equity securities, according to the

15   following documents that were filed with the United States Securities and Exchange

16   Commission: Form 4 (filed October 11, 2012), Form 4 (filed July 23, 2012), Form 4 (filed

17   January 2, 2013), Form 4 (filed February 29, 2012) and Schedule 13G (filed November 9, 2012).

18   • Austin Ventures VIII, L.P.

19   • Battery Ventures VIII, L.P.

20   • Brett A. Hurt

21   • EA Private Investments, LLC

22   • Empire Capital Management, LLC

23        Defendant further certifies that as of this date – other than the named parties – it is

24   unaware of any person or entity with an interest to report.  Civil. L.R. 3-16(c)(2).

25        **20. Other**

26        **Nationwide Service of Trial Subpoenas.**  Good cause having been shown in view of the

27   geographic dispersion of potential witnesses in this action, the parties are permitted, pursuant to 15

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 22
CASE NO. 13-CV-00133-EMC

1    U.S.C. § 23, to issue trial subpoenas that may run into any other federal district requiring

2    witnesses to attend this Court.  The availability of nationwide service of process, however, does

3    not make a witness that is otherwise "unavailable" for purposes of Fed. R. Civ. P. 32 and Fed. R.

4    Evid. 804, available under those rules.

5                                                    Respectfully submitted,

6

7    Dated:  February 7, 2013              By:  _____/s Dominique-Chantale Alepin_
                                           Dominique-Chantale Alepin
8                                          Wilson Sonsini Goodrich & Rosati
                                           650 Page Mill Rd
9                                          Palo Alto, CA 94304
                                           Telephone: (650) 493-9300
10                                         Facsimile: (650) 849-6811
                                           E-mail: dalepin@wsgr.com
11
                                           Attorneys for Defendant
12                                         Bazaarvoice, Inc.

13

14
     Dated:  February 7, 2013              By:  _____/s Peter K. Huston_____
15                                         Peter K. Huston
                                           Assistant Chief
16                                         United States Department of Justice
                                           Antitrust Division
17                                         450 Golden Gate Ave.
                                           San Francisco, CA 94102
18                                         Telephone: (415) 436-6660
                                           Facsimile: (415) 436-6687
19                                         E-mail: peter.huston@usdoj.gov

20                                         Attorneys for Plaintiff
                                           United States of America
21

22                                **[PROPOSED] ORDER**

23

24   Dated: _____            _____
25                                           The Honorable Edward M. Chen
                                             United States District Judge
26

27

28
     JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER – PAGE 23
     CASE NO. 13-CV-00133-EMC

**ATTESTATION**

I, Dominique-Chantale Alepin, am the ECF User whose identification and password are being used to file the **JOINT CASE MANAGEMENT STATEMENT, DISCOVERY PLAN AND [PROPOSED] ORDER**.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Peter K. Huston has concurred in this filing.


Dated:  February 7, 2013                          WILSON SONSINI GOODRICH & ROSATI
                                                  Professional Corporation


                                                  By: _____/s/ Dominique-Chantale Alepin
                                                  Dominique-Chantale Alepin


                                                  Attorneys for Defendant
                                                  Bazaarvoice, Inc.