UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br>   v.<br>BAZAARVOICE, INC,<br><br>        Defendant.<br>_____/ | No. C 13-00133 EMC (LB)<br><br>**ORDER RE DISCOVERY DISPUTE**<br><br>[Re: ECF No. 55 ] |

**INTRODUCTION**

The United States filed this lawsuit for equitable relief against Bazaarvoice, alleging that its June 2012 acquisition of PowerReviews violated section 7 of the Clayton Act. *See* Complaint, ECF No. 1.[1] Bazaarvoice sells product ratings and reviews platforms (PRR platforms) that allow companies to collect, organize, and display customer-generated ratings and reviews. The gist of the case is that PowerReviews was a lower-priced competitor, Bazaarvoice's sales were direct and negotiated client-by-client, PowerReviews was the only competition for direct sales, and – even if PowerReviews was only an ankle-biter – it affected the pricing and a competitive model that (without PowerReviews) would allow Bazaarvoice to fashion a price that would match what the customer would pay. *See* Complaint, ¶¶ 27-29.

The parties have a discovery dispute about the sufficiency of the United States' responses to

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

Bazaarvoice's interrogatories 2, 3, and 4. The court held a hearing on April 22, 2013 and denies Bazaarvoice's motion that the United States supplement its responses now.

## ANALYSIS

### I. INTERROGATORY NUMBER 2

Interrogatory Number 2 asks the United States to "IDENTIFY ANY ENTITIES that YOU PROVIDE or have the capacity to PROVIDE the 'PRR platforms' referenced in the COMPLAINT." The United States responded by saying that during the investigation, Bazaarvoice identified 8 firms that "allegedly provide at least some of the PRR functionality described in the complaint." ECF No. 55 at 16. It then said that it "has not identified any commercial provider of PRR platforms other than PowerReviews that has acted as a significant constraint on Bazaarvoice's competitive behavior." *Id.* It set forth a "non-exhaustive" list of business documents (6 emails and a PowerReviews presentation) in which Bazaarvoice and PowerReviews employees basically identified each firm's principal competition as each other and no one else. *Id.*

Bazaarvoice says that the Plaintiff has alleged (A) a relevant market of "'PRR platforms used by retailers and manufacturers'" and (B) no other competitor (besides the parties) "'has a significant number of PRR platform customers in the United States.'" Joint Brief, ECF No. 55 at 1 (quoting Complaint ¶¶ 30, 1). It needs to know what the United States believes are the other PRR platform providers, not what Bazaarvoice identified during the investigation. *Id.* The United States responds that it has identified the spectrum of PRR platform alternatives that are available, whether in-house or commercially-supplied. *Id.* at 3 (arguing that during the investigation, Bazaarvoice had every incentive to identify competitors and identified these in its white paper during the pre-filing investigation).

At the hearing, the United States represented that it has given its theory of the case. The parties also made only these arguments. The United States also agreed to supplement its responses as it develops new information. On this record, the United States' responses are sufficient, and it should supplement them later if it finds out more later.

### II. INTERROGATORIES 3 AND 4

Interrogatory Number 3 asks the United States to "IDENTIFY ANY ENTITIES that YOU

C 13-00133 EMC (LB)
ORDER RE DISCOVERY DISPUTE                 2

1  contend have been or will be harmed by the alleged anti-competitive effects of the TRANSACTION
2  referenced at Paragraph 62 of the COMPLAINT." The United States responded by (A) quoting
3  Bazaarvoice's CEO's "recent public discussion with equity analysts" describing his business as
4  selling ratings and reviews solutions to online retailers, (B) cross-referencing the response to
5  Interrogatory Number 2 that PowerReviews was the most significant constraint on Bazaarvoice's
6  competitive conduct, and (c) concluding that all of Bazaarvoice's and PowerReviews' current or
7  prospective customers (online retailers and brands that sell products through the retailers) are the
8  entities that "may be harmed by the loss of head-to-head competition between Bazaarvoice and
9  PowerReviews." *Id.* at 17-18.

10   Interrogatory Number 4 asks the United States to, "For each ENTITY IDENTIFIED in response
11  to Interrogatory No. 3, DESCRIBE the reasons that each ENTITY has or will experience the alleged
12  anti-competitive effects" of that transaction. The United States responded by (A) describing
13  Bazaarvoice and PowerReviews as the top two commercial suppliers of PRR platforms to
14  manufacturers and retailers, (B) contending that the manufacturers and retailers benefitted from
15  head-to-head competition that commonly resulted in price concessions (quoting emails showing a
16  revised Bazaarvoice proposal based on a PowerReviews competitive proposal and a former
17  Bazaarvoice CEO's view that PowerReviews brings prices down), and (c) contending that current or
18  future customers may be harmed by the loss of competition (citing Bazaarvoice documents that the
19  acquisition would eliminate "feature driven one-upmanship" between the firms and acknowledging
20  that the firms pushed each other to innovate over the years). *Id.* at 18-19.

21   Bazaarvoice says that it did not ask about the customers who "may be harmed" and instead needs
22  to understand the customers who have been or will be harmed by the allegedly anti-competitive
23  effect. Joint Brief at 1-2 (quoting allegations in the complaint at paragraphs 9, 36, 55, and 62 that
24  elimination of competition between Bazaarvoice and PowerReviews "will harm" customers). It says
25  that to prevail at trial, the United States must establish that customers are likely to be harmed (unless
26  it alleges a combined post-merger market share of more than 30 percent, which it has not done). *Id.*
27  (asserting that post-merger market share of more than 30 percent would entitle the United States to a
28  presumption that the transaction raises competitive problems) (*citing United States v. Philadelphia*

C 13-00133 EMC (LB)
ORDER RE DISCOVERY DISPUTE        3

*Nat'l Bank*, 374 U.S. 321, 364-72 (1963)). It concludes that it should not have to wait until expert discovery and trial given that the lawsuit already prejudices it and noting that Plaintiff contacted over one-hundred and forty entities in its investigation. *Id.*

The United States responds that it does not have to prove actual harm under section 7 and needs to prove that the effect of the acquisition "'may be substantially to lessen competition, or tend to create a monopoly.'" *Id.* at 4 (quoting 15 U.S.C. § 18). It also says that it does not need to plead the market shares in its complaint to preserve its ability to pursue a *Philadelphia National Bank* presumption at trial. *Id.* at 5. Nonetheless, it did describe a high-level of concentration by describing the pre-merger Bazaarvoice-PowerReviews duopoly and discussing their combined market share. *Id.* It will continue to develop more evidence in discovery and in the end, even if it is not entitled to the presumption, it will not need to prove actual anti-competitive effects and (again) only needs to prove by a preponderance a reasonable probability that the effect of the merger will be substantially to lessen competition. *Id.*

As Bazaarvoice concedes, the legal standard about what the government needs to prove at trial does not need to be resolved now. *Id.* at 3. What it says is that there are no anti-competitive effects and that the government should support its contentions now given the prejudice to its business.

Essentially, Bazaarvoice wants the government to provide more detailed responses to its "contention interrogatories."[2] Rule 33 governs the use of contention interrogatories to discover the factual basis for allegations in a complaint. "Courts using their Rule 33(a)(2) discretion generally

---

[2] *See In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332 (N.D. Cal. 1985) (As Magistrate Judge Brazil explained: "[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate what it contends. Some people would define contention interrogatories as embracing only questions that ask another party whether it makes some specified contention. Interrogatories of this kind typically would begin with the phrase 'Do you contend that . . . .' Another kind of question that some people put in the category 'contention interrogatory' asks an opposing party to state all the facts on which it bases some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the evidence on which it bases some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to how the law applies to facts. A variation on this theme involves interrogatories that ask parties to spell out the legal basis for, or theory behind, some specified contention.").

disfavor contention interrogatories asked before discovery is undertaken." *In re eBay Seller Antitrust Litigation*, No. C07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citing *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005)). "In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." *Id*. (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985)). Thus, as a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show that the responses would "contribute meaningfully" to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56. *See In Re Convergent Techns. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985).

While the court acknowledges that this case is on a faster track than normal[3], it still is in its early stages. The government agreed to supplement its responses as it develops more information, and it agreed that it would not use the words in the interrogatory "have been or will be harmed" as an excuse not to amend or respond further. This potentially matters because the parties disagree about whether the government will have to prove actual harm at trial, and the government's response means that it will not use a legal reason or a literal interpretation to avoid providing information that would be responsive to what Interrogatory Number 3 calls for: entities affected by the allegedly anti-competitive effects of the acquisition.

As to the 140 customers the government contacted, it has provided the list, and it agreed to segregate out of that list the interviewees who would not fit in to the response to Interrogatory Number 3.

As to the effect of this on Interrogatory Number 4, as discussed on the record, the government has provided its theory of the case. It emphasized that it was not sandbagging Bazaarvoice and that

---

[3] The United States filed the action on January 10, 2013, and, per the parties' request, fact discovery closes on June 28, 2013, and trial is set for September 10, 2013. *See* 2/19/2013 CMC Order, ECF No. 29.

there was nothing more to provide at this time. Given its willingness to amend as discovery provides more context, the court does not believe that Bazaarvoice has met its burden to show that further responses, at this time, would "contribute meaningfully" to any of the *In Re Convergent Technologies* factors.

**CONCLUSION**

This disposes of ECF No. 55.

**IT IS SO ORDERED.**

Dated: April 22, 2013

_____
LAUREL BEELER
United States Magistrate Judge