UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| UNITED STATES, | No. C 13-00133 WHO (LB) |
| Plaintiff, | **ORDER RE DISCOVERY DISPUTE** |
| v. | [Re: ECF No. 85] |
| BAZAARVOICE, INC, | |
| Defendant. | |

## INTRODUCTION

The United States filed this lawsuit for equitable relief against Bazaarvoice, alleging that its June 2012 acquisition of PowerReviews violated section 7 of the Clayton Act. *See* Complaint, ECF No. 1.[1] Bazaarvoice sells product ratings and reviews platforms that allow companies to collect, organize, and display customer-generated ratings and reviews, and PowerReviews allegedly was a lower-priced competitor. *See* Complaint, ¶¶ 27-29.

The parties have a discovery dispute about the United States' subpoena to the current and former employers of Bazaarvoice's industry expert, Jason Goldberg. Joint Letter Brief, ECF No. 85. The court held a hearing on July 18, 2013, and orders the case management solution described below.

## STATEMENT

Mr. Goldberg is an e-commerce consultant. His current employer is the digital marketing

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 13-00133 WHO (LB)
ORDER

agency Razorfish, and his previous employer was CrossView.  On June 21, 2013, Bazaarvoice disclosed the report and "all facts or data considered by Mr. Goldberg, set forth in 155 footnotes and a twelve page list of materials considered." *Id.* at 1.  In his expert report, Mr. Goldberg mentions former clients, recommendations he gave them, and knowledge he acquired from his experiences with them. The letter brief gives two examples:

> 1. Retailer A is a current e-commerce site that uses Gigya for social sign-in and Bazaarvoice for ratings and reviews. As part of a site optimization project, I recommended that [Retailer A] consider migrating its ratings and reviews from Bazaarvoice to Gigya.
>
> 2. For example, based on my personal experience, I know that in an entity like [Manufacturer A], the marketing department may prioritize collecting reviews that can be syndicated to important retailers like [Retailer B], the ecommerce team may be focused on reviews which will best generate sales on the site, and the IT department might be focused on the solution that is easiest to host and maintain . . . . I have seen this occur regularly at firms including [Retailer C], [Retailer D], [Retailer E] and others.

*Id.*  The United States obtained a declaration from the client in example 1, and it thinks that on its face, the declaration appears to contradict representations in the report:

> Prior to the acquisition, [Retailer A] used Bazaarvoice to support R&R services on the Company's website and continues to use Bazaarvoice today. To the best of my knowledge, and since I began working at [Retailer A] in March 2010, the Company has not considered another vendor for R&R services.

*Id.*  The United States thus subpoenaed Razorfish and CrossView for the following:

> 1. Provide all documents received by, sent by, or authored in whole or in part by Jason Goldberg (or any person reporting to Jason Goldberg) relating to product ratings and reviews.
>
> 2. Provide all documents relating to any transaction, request for proposal, or contract for the purchase of product ratings and review services (whether alone or in combination with other features or services) by any client of the company for whom Jason Goldberg (or any person reporting to Jason Goldberg) managed or provided any services or advice.
>
> 3. Provide all documents received by, sent by, or authored in whole or in part by Jason Goldberg discussing Bazaarvoice, PowerReviews, or the Transaction.
>
> 4. Provide all documents received by, sent by, or authored in whole or in part by Jason Goldberg (or any person reporting to Jason Goldberg), and relating to the list known as the Internet Retailer 500.
>
> 5. Provide all documents created on or after January 1, 2011 relating to any effort by the company to facilitate or develop the technical capability for any client to exchange data with another company, including but not limited to all documents relating to the ease or difficulty of facilitating such exchanges.
>
> 6. Provide all documents created on or after January 1, 2011 relating to any agreement for the company to moderate, review, monitor, or curate any online content for any client.

*Id.*, Exs. A & B. The government's cover letter to the subpoenas explained that it was subpoenaing the documents because Mr. Goldberg had been retained as an expert in the Bazaarvoice antitrust case and had relied on his expertise working at the companies, including the work performed on behalf of particular named clients, as the basis for his expert opinion. *See, e.g., id.*, Ex. A, ECF No. 85-1 (including specifications for the production of ESI and a copy of the protective order in the case).

Mr. Goldberg "did not look at or consider any documents related to his engagements with particular clients in forming his opinions or preparing his report." *Id.*, ECF No. 85 at 1 & Goldberg Declaration, Ex. C, ECF No. 85-3.

## ANALYSIS

An expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). It also must include "facts and data considered" by the expert in forming them." Fed. R. Civ. P. 26 (a)(2)(B)(ii). The duty to disclose is broad. Adv. Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(B) governs only disclosure in expert reports, however, and it does not preclude parties from obtaining further information through ordinary discovery tools. *See Expeditors Int'l of Washington, Inc. v. Vastera, Inc.*, No. 04 C 0321, 2004 WL 406999, at *3 (N.D. Ill. Feb. 26, 2004); *see also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2452 (3d ed. 2013). For example, an expert may be asked in a deposition about testimony given in other litigation beyond the four-year period specified in Federal Rule of Civil Procedure 26(a)(2)(B). Adv. Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)(2)(B)(v).

Here, Mr. Goldberg relies on his past knowledge and experience for his report. He says that he did not review documents related to his past clients, but he relied on his memory of his past clients and specifically mentioned them in his report.

The cases that the parties cite do not address directly the issue about whether the government is entitled to more than Mr. Goldberg disclosed in his report. Bazaarvoice cites cases that stand for the basic point that pursuant to Rule 26 an expert does not need to turn over documents he reviewed before his retention as an expert when the expert relies in part on his prior knowledge and

C 13-00133 WHO (LB)
ORDER   3

experience. *See*, *e.g.*, *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 61-62 (S.D.N.Y. 1997); *Eliasen v. Hamilton*, No. 81-0123, 1986 WL 7654, at *1-3 (N.D. Ill. July 2, 1986); *IBM Peripheral EDP Devices Antitrust Litig.*, 77 F.R.D. 39, 42 (N.D. Cal. 1977) That is a fair enough point, but in those cases it does not appear that the experts specifically mentioned past examples in their reports. Instead, their past knowledge was relied upon generally. The Government cites cases that stand for the basic point that Rule 26 should be construed liberally because the adversarial nature of our system requires that expert's opinions be challenged. *See*, *e.g.*, *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05 CV 80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007); *Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 306 (W.D. Va. 1998). It also cites cases for the proposition that courts should really focus on whether specific information was used by the expert for the report. *See*, *e.g.*, *U.S. v. Sierra Pac. Indus.*, No. CIV S-09-2445 KJM EFB, 2011 WL 5508864, at *6 (E.D. Cal. Nov. 8, 2011); *Am. S.S. Owners Mut. Prot. & Indem. Assoc. v. Alcoa S.S. Co.*, No. 04 Civ. 4309 LAKJCF, 2006 WL 212376, at *2 (S.D.N.Y. Jan. 26, 2006); *Reed v. Binder*, 165 F.R.D. 424, 428 n.6 (D.N.J. 1996). It argues too that its subpoenas were proper expert discovery because it issued them only because in its opinion, Bazaarvoice did not comply with its Rule 26 obligations. *See* 6/29/2013 DOJ letter to Bazaarvoice, ECF No. 85-6 at 1.

The obligation under Rule 26 arguably is different for the past employer for information that Mr. Goldberg only recalls and did not review. The current employer is a closer call: the temporal interplay among advice, documentary support for it, and expert opinion might be important and might mean that there is documentary information that was relied on (even if not technically reviewed by the expert in preparing his report and ultimate testimony). *Cf.* Adv. Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)(2) (discussing duty to retain the reviewed materials that are disclosable under Fed. R. Civ. P. 26(a)(2)(B)(ii)). Then again, relying on memory is different than reviewing "facts or data" under Rule 26(a)(2)(B)(ii), and identifying the basis for the opinion arguably passes muster as a sufficient disclosure of the "basis and reasons" for the opinions under Rule 26(a)(2)(B)(i).

From a very practical perspective, if there are discrepancies in an expert report, more illumination can be appropriate. Regardless of Bazaarvoice's obligations under Rule 26(a)(2)(B),

the government can use different discovery tools to illuminate and challenge expert testimony, as discussed above. A Rule 45 subpoena is such a mechanism. *See Expeditors*, 2004 WL 406999, at *3 ("[A] subpoena *duces tecum* issued pursuant to Rule 45 is an appropriate discovery mechanism against nonparties such as a party's expert witness."); *All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 152 F.R.D. 634, 639 (D.Kan. 1993) ("With regard to nonparties such as plaintiff's expert witness, a request for documents may be made by subpoena *duces tecum* pursuant to Rule 45."); *Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 1822428, at *3 (D. Kan. July 23, 2002) (ordering expert to produce testimony pursuant to Rule 45 subpoena). It cannot be that the government has to take the expert's report as is. If an expert report relies on a recollection, then the opposing party ought to be able to dig into the factual foundation for the recollection. On the other hand, the subpoenas are broad and appear to "subject[] a person to undue burden" especially when one considers their scope versus the utility. (Bazaarvoice confirmed at the hearing that the recipients object on breadth grounds and are piggybacking on the joint letter process to resolve the issues of burden.[2])

    Looking at what the government wants here, the alleged discrepancy it identifies seems pretty attenuated and not much of a contradiction: the expert's identification of his recommendation to a retailer to consider migrating from Bazaarvoice to Gigya versus the retailer's recollection that – to the best of his recollection and since he started working at the retailer in March 2010 – the retailer did not consider another vendor. *See supra* at 2. On the other hand, what needs to be illuminated seems modest: at issue are roughly 15 clients with potential information, and 5 have been deposed, leaving a universe of roughly 10.[3]

---

[2] Bazaarvoice suggests that this is fact discovery, not expert discovery, and fact discovery closed on June 28, 2013. Given that disclosure of the expert report on June 21, 2013 and the interplay with expert discovery, the undersigned does not think that such a literal application of the rules is appropriate here. On the other hand, that does not mean that the full subpoenas are appropriate either.

[3] These specifics were identified at the hearing. The government also pointed out at the hearing that it did not have the benefit of the expert's report and alleged discrepancies during the 100 or so short depositions, which it thinks militates in favor of illumination before its deposition of Mr. Goldberg.

C 13-00133 WHO (LB)
ORDER                                  5

To balance the seemingly limited utility and the burden issues versus the government's interest in illuminating the fact lay of the land before the expert deposition, and given the interplay with the rules about expert discovery, the court devises the following case management strategy. Counsel should review the 10 or so clients at issue, identify potential "facts and data" or the "basis and reasons" for the specific opinions or recollections that Mr. Goldberg expressed or referenced, and identify the documents that might support the specific recollection that Mr. Goldberg identified in his report. The government can provide what input it wants, but the information will come from Mr. Goldberg, who can identify what supporting documents might exist, their likely content (as specifically as possible), and their accessibility. For example, for the Retailer A example, the issue is Mr. Goldberg's recommendation. An answer might be how that recommendation was communicated. If it was a written recommendation, perhaps it is in a client file. If it is, and the client is with the current employer, perhaps the document could be provided easily. If it is the former employer, then by definition there is no underlying "fact or data" that was relied on.[4] In any event, Mr. Goldberg could illuminate the "basis and reasons" for the expert opinions. That could be done in a formal supplement, or the parties could agree to an informal exchange before the deposition.

The court's view is that this mechanism reduces uncertainty for the government, eliminates burden to Razorfish and CrossView in light of what appears to be marginal utility, and aids the orderly deposition of Mr. Goldberg so that the government retains its ability to focus on what matters and not be distracted by the perceived need to develop impeachment.

**CONCLUSION**

This disposes of ECF No. 85.

**IT IS SO ORDERED.**

Dated: July 18, 2013

_____
LAUREL BEELER
United States Magistrate Judge

---

[4] At the hearing, the government said that Mr. Goldberg's affidavit that he did not look at documents is not credible or necessarily dispositive. For the former employer, either Mr. Goldberg has access to the documents or he does not, and if he does not, then they are not "facts or data" relied on.