UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BAZAARVOICE, INC.,<br><br>    Defendant. | Case No. 13-cv-00133-WHO<br><br>**ORDER REGARDING EVIDENTIARY OBJECTIONS AT TRIAL AND CONFIDENTIALITY OF THIRD PARTY MATERIALS** |

**INTRODUCTION**

This Order addresses various evidentiary issues raised in connection with the trial: i) motions to seal filed by third party witnesses; ii) the government's motion in limine to exclude the testimony of Bazaarvoice's industry expert, Jason Goldberg; iii) the government objection to the admission of the Yotpo declaration; and iv) other matters.

**DISCUSSION**

**I. EXHIBITS CONTAINING CONFIDENTIAL INFORMATION PRODUCED BY THIRD PARTIES SHALL REMAIN REDACTED FOR THREE YEARS**

The government and Bazaarvoice subpoenaed thousands of documents from third parties that were produced pursuant to a Protective Order. The Court required the parties to notify the third parties of any exhibits they intended to use that contained confidential information so that the parties could object to their disclosure. In response, the Court received 17 motions to seal from third parties. Bazaarvoice and the government then winnowed the exhibit list further and notified

1   the third parties a second time of the documents that would be used at trial.

2   Courts have recognized a "general right to inspect and copy public records and documents,
3   including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597
4   & n. 7 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong
5   presumption in favor of access' is the starting point." *Kamakana v. City and Cnty. of Honolulu*,
6   447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d
7   1122, 1135 (9th Cir.2003)). In order to overcome this strong presumption, a party seeking to seal
8   a judicial record must articulate justifications for sealing that outweigh the public policies favoring
9   disclosure. *Kamakana,* 447 F.3d at 1178-79. A trial is "at the heart of the interest in ensuring the
10  'public's understanding of the judicial process and of significant public events." *Id*. A party
11  seeking to seal a evidence at trial must therefore articulate "compelling reasons" in favor of
12  sealing. *Id*. at 1178.

13  Having reviewed the information in the exhibits, the Court finds that there is compelling
14  reason to redact all of the information at issue to maintain its confidentiality, and the motions to
15  seal are GRANTED to the extent that the third party documents were introduced as exhibits at
16  trial. The information contains pricing and competitive information that could cause damage to
17  the third parties if made public. The information at issue is not dispositive in any sense to the
18  litigation, and the third parties did not voluntarily put it at issue in this litigation. If the Court
19  required the information to be disclosed, it would chill investigations in the future where third
20  party documents are essential. Motions to seal documents that were not used as trial exhibits are
21  DENIED as moot.

22  **II. GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF JASON GOLDBERG AND ITS MOTION TO STRIKE PORTIONS OF MR. GOLDBERG'S TESTIMONY**
23

24  The government moved prior to trial to exclude or sharply limit the testimony of
25  Bazaarvoice's marketing expert, Jason Goldberg, on the grounds that he was not qualified, did not
26  supply supporting materials for his testimony, and had unreliable and irrelevant opinions.
27  Bazaarvoice countered that Mr. Goldberg i) was eminently qualified, ii) is a leading expert in
28  eCommerce and social marketing solutions, iii) had disclosed all relevant materials, and iv) would

provide valuable testimony for the Court based on his experience. During Mr. Goldberg's testimony, the government also objected to his testimony about comparisons of ratings and reviews products, the ease of developing an in-house solution for ratings and reviews products, and his opinion of Amazon's ratings and reviews as the "gold standard."

As a threshold matter, even in the age of *Daubert* and *Kumho*, experience-based experts may testify on matters within their expertise. *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) (admitting proffered expert's industry testimony where his expertise "is one based on experience"); *Hangarter v. Provident Life and Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) ("Given Caliri's significant knowledge of and experience within the insurance industry, the district court did not abuse its discretion in concluding that he was qualified to testify as an expert witness."). In the broad and rapidly evolving field of eCommerce and social commerce, Mr. Goldberg has sufficient experience and recognition to qualify as an expert. The real issue is whether he is expert in any issues that are germane to this case and, if so, which ones.

Mr. Goldberg was not proffered as an academic expert and he admits that he has no expertise regarding any of the antitrust issues in the case, such as market shares, competitive effects, unilateral effects or entry. Trial Tr. 1545:16-1546:5 (Goldberg). He based his testimony on his experience with clients. He had never testified as an expert before and was unaware of any expert that had been qualified before in "shopper marketing." Trial Tr. 1544:10-15 (Goldberg). He had not performed a systematic study of Ratings and Reviews platforms. Trial Tr. 1547:15-18 (Goldberg). He could not review client documents in preparing his reports and, consequently, prepared the report from his memory. Trial Tr. 1547:19-1548:10 (Goldberg). He was unable to fact check much of the report and had to omit highly confidential client information. Trial Tr. 1548:11-25, 1549:5-8 (Goldberg). It would be impossible to replicate his results. Trial Tr. 1549:9-13 (Goldberg).

Mr. Goldberg has sufficient expertise to testify generally that eCommerce and social marketing is a rapidly evolving area, and the Court found his testimony and opening report on pages 7 through 38 generally helpful in that regard. His actual experience with Ratings and

Review products, however, is more limited than many of the customer witnesses who testified at trial, and the Court finds that he lacks expertise to testify as an expert in that more specific subset of eCommerce and social marketing solutions. His testimony would be entitled to minimal weight if he had such expertise. To the extent testimony based on his personal advice to clients is admissible, the Court gives it no weight because of the lack of depth of his Ratings and Reviews experience.

Because of Mr. Goldberg's lack of qualifications concerning the antitrust issues presented in this case, his modest direct experience with Ratings and Reviews in comparison to many of the customer witnesses, and the deficiencies identified concerning the preparation of his report, the Court sustains the government's objections to Mr. Goldberg's expert opinions regarding product comparisons, in-house solutions and Amazon as a standalone Rating & Review product.

### III. GOVERNMENT'S OBJECTION TO USE OF YOTPO DECLARATION

The government objected to the admission of DX1400, a two page declaration from Tomer Targin, as hearsay. Mr. Targin is the co-founder and CEO of Yotpo, an Israeli company that offers R&R solutions. The declaration is surely hearsay, but Bazaarvoice argues that the parties agreed to its admission pursuant to various general stipulations during the course of discovery. It is unclear that the government made such an agreement generally, and it clearly did not specifically with respect to DX1400. However, the stipulations provide some support for Bazaarvoice's perspective and other declarations were offered without objection. To avoid any claim of prejudice or surprise, the Court admits the Yotpo declaration.

That said, a declaration is hardly a meaningful way to offer evidence at trial. Suffice it to say, the Court does not give much weight to the Yotpo declaration or to any declaration submitted without the benefit of cross-examination. The Court heard the testimony of 40 trial witnesses and read more than 100 depositions of customers. The evidence adduced from them is far more reliable.

### IV. OTHER OBJECTIONS

The parties stipulated to the admission of some 980 exhibits, including more than 100 depositions, subject to objections made during the depositions or in exhibit lists produced by the

4

parties prior to trial.  The objections addressed above were the primary ones raised at trial.  For the sake of completeness, however, to the extent the Court has not ruled on any outstanding objections to evidence submitted pursuant to stipulation, the Order overrules any objection to the evidence on which the Court has relied in its Memorandum Opinion.  The remaining objections are moot.

**IT IS SO ORDERED**.

Dated: January 8, 2014



WILLIAM H. ORRICK
United States District Judge