Peter K. Huston (CA Bar No. 150058)
United States Department of Justice, Antitrust Division
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-6660
Facsimile: (415) 436-6687
E-mail: peter.huston@usdoj.gov

Michael D. Bonanno (DC Bar No. 998208)
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 7100
Washington, DC 20530
Telephone: (202) 532-4791
Facsimile: (202) 616-8544
E-mail: michael.bonanno@usdoj.gov

Attorneys for Plaintiff United States of America

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>BAZAARVOICE, INC.<br><br>*Defendant*. | Case No. 13-cv-00133 WHO<br><br>**THIRD AMENDED FINAL JUDGMENT**<br><br>Judge:   Hon. William H. Orrick |

**THIRD AMENDED FINAL JUDGMENT**

Plaintiff United States of America filed its Complaint on January 10, 2013; Defendant Bazaarvoice, Inc., filed its Answer on February 22, 2013, denying the substantive allegations in the Complaint; this Court having conducted a full trial on all issues of liability and issued its findings of fact and conclusions of law on January 8, 2014, holding that the acquisition of PowerReviews by Bazaarovice violated Section 7 of the Clayton Act, 15 U.S.C. § 18; and

The United States and Defendant, by their respective attorneys, have consented to the entry of this Final Judgment; and

Defendant agrees to be bound by the provisions of this Final Judgment pending its approval by the Court; and

The essence of this Final Judgment is the prompt and certain divestiture of certain assets and rights by Defendant to fully restore the competition eliminated by Bazaarvoice's unlawful acquisition;

It is hereby ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has personal jurisdiction over Bazaarvoice and subject matter jurisdiction under Section 15 of the Clayton Act, 15 U.S.C. § 25.

## II. Definitions

As used in this Final Judgment:

A.  "Acquirer" means the entity to whom Defendant divests the Divestiture Assets.

B.  "Bazaarvoice" or "Defendant" means Bazaarvoice, Inc., a Delaware corporation with its headquarters in Austin, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "Divestiture Assets" means

  1. All tangible and intangible assets that were acquired by Bazaarvoice when it purchased the PowerReviews business on June 12, 2012, including:

    i. All tangible assets that comprise the PowerReviews business, including research and development activities; all personal property, inventory, materials, supplies, office

furniture, computer systems, and other tangible property and all assets used in connection with the PowerReviews business; all licenses, permits and authorizations issued by any governmental organization relating to the PowerReviews business; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, relating to the PowerReviews business, including supply agreements; all customer lists, contracts, accounts, and credit records; and all repair and performance records and all other records relating to the PowerReviews business; and

          ii. All intangible assets used in the development, production, servicing and sale of the PowerReviews assets, including, but not limited to, all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development relating to the PowerReviews assets, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Defendant provides to its own employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to the PowerReviews assets, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

    2. All tangible and intangible assets, as described above, that were acquired, developed, designed, or produced for use with the PowerReviews assets described in II.C.1 since June 12, 2012.

    3. A license, for four (4) years, to sell Bazaarvoice's Syndication Services product or service offering to customers of Acquirer as described in Section V.A.

    4. All technology (whether software, hardware, or both), know-how (including trade secrets), and other intellectual property rights necessary for Acquirer to provide access to Bazaarvoice's Syndication Services to its customers.

5. A list of all of Defendant's customers that either (1) renewed a contract for the provision of a PRR Platform with Defendant since June 12, 2012, or (2) became a new customer of Defendant for a PRR Platform since June 12, 2012. Such list shall include the name of each such customer and the date on which the customer's contract expires and/or is up for renewal.

6. A list of each feature, improvement, upgrade or any other technology related to PRR Platforms that Defendant developed since June 12, 2012 for use with Bazaarvoice's PRR Platform(s).

D. "PowerReviews" means (1) PowerReviews, Inc., the company that was acquired by Bazaarvoice on June 12, 2012, and (2) all the assets formerly of PowerReviews, Inc.

E. "PowerReviews Enterprise Platform" means all PowerReviews PRR Platform products except for PowerReviews Express (also referred to as Bazaarvoice Express) products and the Buzzillions web product.

F. "PRR Platform" means the front-end and back-end technologies, including features such as moderation, syndication, and analytics, that enables the collection, organization, storage, use and display of user-generated product ratings and reviews and related content on a website.

G. "Transition Services Agreement" means an agreement between Defendant and Acquirer for Defendant to provide all necessary transition services and support to enable Acquirer to fully operate the Divestiture Assets and compete effectively in the market for providing PRR Platforms in the United States as of the date the Divestiture Assets are sold.

H. "Syndication Services" means the products and services currently provided by Bazaarvoice, and any successor thereto, that provide the ability to share product ratings and reviews and related content between two or more customers.

### III. Applicability

A. This Final Judgment applies to Bazaarvoice as defined above, and all other persons in active concert or participation with it who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Section IV and VI of this Final Judgment, Defendant sells or otherwise disposes of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, Defendant shall require the purchaser to be bound by the provisions of this Final Judgment. Defendant need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV. Divestiture

A. Defendant is ordered and directed to divest the Divestiture Assets within ten (10) days of the entry of the Final Judgment in this matter in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. Defendant agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B. Defendant shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendant shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendant shall make available such information to the United States and the Trustee at the same time that such information is made available to any other person.

C. Defendant shall provide Acquirer and the United States with information relating to the personnel involved in the production, operation, development and sale of the Divestiture Assets, and all Bazaarvoice PRR Platforms, to enable Acquirer to make offers of employment. Defendant will not interfere with any negotiations by Acquirer to employ any of Defendant's current or former employees. Interference with respect to this paragraph includes, but is not limited to, enforcement of non-compete clauses with regard to the Acquirer, and offers to increase salary or other benefits apart from those offered company-wide. In the event any

current or former employee(s) of Defendant accepts an offer of employment with Acquirer within six (6) months of the date of the sale of the Divestiture Assets, Defendant will not seek to enforce any restrictions against or otherwise prohibit such employee(s) from using or disclosing to the Acquirer any of Defendant's trade secrets, know-how or proprietary information related to PowerReviews' or Defendant's PRR Platform technology in connection with the employee(s)'s employment with Acquirer, nor will Defendant seek to impede or prohibit Acquirer's use of such trade secrets, know-how or proprietary information.  Nothing in this paragraph shall prevent Defendant from taking any appropriate legal action against any of Defendant's current or former employees who (1) accept an offer of employment with Acquirer and (2) remove tangible documents (whether in hard-copy or electronic form) or items from Bazaarvoice that contain trade secrets, know-how or proprietary information.

   D. Defendant shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

   E. Defendant shall warrant to Acquirer that each asset will be operational on the date of sale.

   F. Defendant shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

   G. At the election of Acquirer, Defendant and Acquirer shall enter into a Transition Services Agreement for a period up to one (1) year from the date of the divestiture.  The Transition Services Agreement shall enumerate all the duties and services that Acquirer requires of Defendant.  Defendant shall perform all duties and provide any and all services required of Defendant under the Transition Services Agreement.  Any amendments, modifications or extensions of the Transition Services Agreement may only be entered into with the approval of the Court.

   H. After the sale of the Divestiture Assets until (1) the expiration of the current PRR Platform contract or (2) one year from the date of the letter described in Section IV.I, whichever

is later, for any PRR Platform customer of Defendant that wishes to become a PRR Platform customer of Acquirer, Defendant shall waive any potential breach of contract claim related to the transfer of that customer from Defendant to Acquirer, notwithstanding any other agreement to the contrary.

      I.      Within three (3) calendar days of the date of the sale of the Divestiture Assets, Defendant shall send a letter to all persons who were customers of Defendant as of the date of the sale of the Divestiture Assets notifying the recipients of the divestiture and providing a copy of this Final Judgment. The letter shall also specifically inform customers of Defendant's obligations under Section IV.H of this Final Judgment. Acquirer shall have the option to include its own letter with Defendant's letter. Defendant shall provide the United States, and the Trustee, a copy of its letter at least three (3) calendar days before it is sent.

      J.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by Trustee appointed pursuant to Section VI, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of providing PRR Platforms in the United States. The divestiture, whether pursuant to Section IV or Section VI of this Final Judgment,

           1.     shall be made to an Acquirer that, in the United States' sole discretion, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of PRR Platforms; and

           2.     shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between Acquirer and Defendant gives Defendant the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise to interfere in the ability of Acquirer to compete effectively.

### V.  Other Required Conduct

      A.      Defendant shall provide to Acquirer and Acquirer's customers access to Defendant's syndication network for four (4) years following the date of sale of the Divestiture Assets by:

       1.     Providing Syndication Services according to the financial terms described in the fee schedule set forth in the definitive divestiture agreement. The pricing contained in the fee schedule shall reflect only Defendant's actual costs in providing the service with no additional fees or charges in connection with the provision of this service. The Acquirer may elect to pay Defendant directly or to have Defendant bill Acquirer's customers for Syndication Services; and

       2.     Providing Syndication Services on non-discriminatory terms with respect to Defendant's and Acquirer's customers. For the avoidance of doubt, the following is a non-exhaustive list of terms for which Defendant may not discriminate:

       i.     speed of content transmission;

       ii.     server lag time and/or uptime;

       iii.     alignment of product databases;

       iv.     database synchronization;

       v.     content presentation;

       vi.     pricing to Defendant's customers based on syndication partner(s);

       vii.     data fields transmitted or utilized; and

       viii.     integration with Question and Answer products.

Nothing in this paragraph shall be interpreted to permit Acquirer's customers receiving Syndication Services from Defendant to violate any terms of service that are applicable to all of Defendant's customers receiving Syndication Services.

     B.     Defendant shall promptly notify the Trustee and the United States of all complaints, whether written or oral, it receives relating to Section V.A of this Final Judgment. The Trustee may conduct an investigation of any complaint and shall submit all findings from any such investigation to the United States and Defendant.

     C.     Defendant shall refrain from soliciting the customers acquired by Acquirer as part of the Divestiture Assets for six (6) months following the date of sale of the Divestiture Assets.

     D.     Defendant shall provide to Acquirer, at no cost to Acquirer, an irrevocable, fully paid-up perpetual and non-exclusive license to all Bazaarvoice patents and patent applications

related to PRR Platforms issued or filed at the time the Divestiture Assets are sold to Acquirer. Defendant shall not sue any PRR Platform customer of Acquirer for infringement of any patent or patent application issued or filed at the time the Divestiture Assets are sold relating to such customer's use of any PRR Platform or other Divestiture Asset provided by Acquirer.

E.  Defendant is prohibited from retaining a copy of or offering for sale any of the Divestiture Assets described in Section II.C.1 and 2.

F.  Defendant shall designate, within ninety (90) days of entry of this Final Judgment, an internal Compliance Officer who shall be an employee of Defendant with responsibility for administering Defendant's antitrust compliance program and helping to ensure compliance with this Final Judgment. The appointment of the Compliance Officer is subject to approval of the United States.  The Compliance Officer shall supervise the review of Defendant's activities to ensure that they comply with this Final Judgment. . The Compliance Officer shall serve until four (4) years following the date of sale of the Divestiture Assets and during that term shall be responsible for performing the following activities:

1. within 15 days of being designated, distributing a copy of the Final Judgment to all officers and directors of Defendant and to all of Defendant's employees involved in providing or supervising the provision of Syndication Services or Transition Services to the Acquirer;

2. promptly distributing a copy of this Final Judgment to any person who succeeds to a position described in Section V.F.1 above;

3. ensuring that those persons designated in Section V.F.1 above are annually briefed on the meaning and requirements of this Final Judgment and the U.S. antitrust laws;

4. obtaining from each person designated in Section V.F.1 above an annual written certification that he or she: (i) has read and agrees to abide by the terms of this Final Judgment; (ii) has attended the briefing required by Section V.F.3 above; and (iii) has been advised and understands that his or her failure to comply with this Final Judgment may result in a finding of contempt of court;

5. maintaining a record of all persons to whom a copy of this Final Judgment has been distributed and from whom the certification described in Section V.F.4 above has been obtained;

6. communicating annually to Defendant's employees that they may disclose to the Compliance Officer, without reprisal, information concerning any potential violation of this Final Judgment or the antitrust laws;

7. taking appropriate action, within three business days of discovering or receiving credible information concerning an actual or potential violation of this Final Judgment, to terminate or modify Defendant's conduct to assure Defendant's compliance with this Final Judgment; and, within thirty (30) days of discovering or receiving such information, providing to the United States and to the Trustee a description of the actual or potential violation of this Final Judgment and the corrective actions taken; and

8. furnishing to the United States and the Trustee on a quarterly basis electronic copies of any non-privileged communications with any person containing allegations of Defendant's noncompliance with any provisions of this Final Judgment or the antitrust laws.

## VI. Appointment of Trustee

A. Upon application of the United States, the Court shall appoint a Trustee selected by the United States and approved by the Court to monitor Defendant's compliance with the obligations set forth in this Final Judgment, and, if necessary, effect the sale of the Divestiture Assets.

B. If Defendant has not sold the Divestiture Assets during the period set forth in Section IV.A, only the Trustee shall have the right to sell the Divestiture Assets. The Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the Trustee, subject to the provisions of Sections IV, V, VI, and VII of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section VI.D of this

Final Judgment, the Trustee may hire at the cost and expense of Defendant any investment bankers, attorneys, or other agents, who shall be solely accountable to the Trustee, reasonably necessary in the Trustee's judgment to assist in the divestiture and performance of the other duties required of the Trustee by this Final Judgment. The Trustee shall provide notice to the United States and Defendant of all persons hired by the Trustee, and the terms of such persons' compensation, within one (1) day of hiring.

C.  Defendant shall not object to a sale by the Trustee on any ground other than the Trustee's malfeasance. Any such objections by Defendant must be conveyed in writing to the United States and the Trustee within ten (10) calendar days after the Trustee has provided the notice required under Section VII.

D.  The Trustee shall serve at the cost and expense of Defendant, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the Trustee and all costs and expenses so incurred. After approval by the Court of the Trustee's accounting, including any remaining fees for its services and those of any professionals and agents retained by the Trustee, all remaining money shall be paid to Defendant. The compensation of the Trustee and any professionals and agents retained by the Trustee shall be on reasonable and customary terms. With respect to work performed pertaining to the divestiture, incentives based on the price and terms of the divestiture and the speed with which it is accomplished may be provided. If the Trustee and Defendant are unable to reach agreement on the Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.

E.  Defendant shall use its best efforts to assist the Trustee in accomplishing the required divestiture and performing the other duties required of the Trustee by this Final Judgment. The Trustee and any consultants, accountants, attorneys, and other persons retained by the Trustee shall have full and complete access to the personnel, books, records, and facilities of Defendant, and Defendant shall develop financial and other information from Defendant as

the Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendant shall take no action to interfere with or to impede the Trustee's accomplishment of the divestiture or any other duties outlined in this Final Judgment.

F. After appointment, the Trustee shall file monthly reports with the United States, Defendant, and the Court setting forth the Trustee's efforts to accomplish the divestiture ordered under this Final Judgment, and Defendant's compliance with the other terms of this Final Judgment. To the extent such reports contain confidential or highly confidential information under the Protective Order, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G. If the Trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after appointment, the Trustee shall promptly file with the Court a report setting forth (1) the Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Trustee's recommendations. To the extent such reports contain confidential or highly confidential information under the Protective Order, such reports shall not be filed in the public docket of the Court. The Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the Final Judgment. The Court thereafter shall enter such orders as it deems appropriate to carry out the purpose of the Final Judgment.

H. The Trustee shall serve until four (4) years following the date of sale of the Divestiture Assets.

I. If the United States determines that the Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Trustee.

### VII. Notice and Court Approval of Proposed Divestiture

A. Within one (1) calendar day following execution of a definitive divestiture agreement, Defendant or the Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States and the Court of any proposed divestiture required by Section IV or VI of this Final Judgment. If the Trustee is responsible, the Trustee shall similarly notify Defendant; if Defendant is responsible, it shall similarly notify the Trustee. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B. Within three (3) calendar days of receipt by the United States of such notice, the United States may request from Defendant, the proposed Acquirer, any other third party, or the Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendant and the Trustee shall furnish any additional information requested within five (5) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within twenty-one (21) calendar days after receipt of the notice or within fifteen (15) calendar days after the United States has been provided the additional information requested from Defendant, the proposed Acquirer, any third party, and the Trustee, whichever is later, the United States shall provide written notice to Defendant and the Trustee stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendant's limited right to object to the sale under Section VI.C of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section VI shall not be consummated. Upon objection

by Defendant under Section VI.C, a divestiture proposed under Section VI shall not be consummated unless approved by the Court.

### VIII.  Financing

Defendant shall not finance all or any part of any purchase made pursuant to Section IV or VI of this Final Judgment.

### IX.  Affidavits

A. Within twenty (20) calendar days of the entry of this Final Judgment, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or VI, Defendant shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or VI of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts Defendant has taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information.

B. Within twenty (20) calendar days of the date of the sale of the Divestiture Assets, Defendant shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendant has taken and all steps Defendant has implemented on an ongoing basis to comply with Section V of this Final Judgment.  Defendant shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendant's earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C. Defendant shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

THIRD AMENDED FINAL JUDGMENT

CASE NO. 13-CV-00133 WHO
PAGE 14

# X. Compliance Inspection

A.  For the purposes of determining or securing compliance with this Final Judgment, or of any related order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant, be permitted:

1.  Access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant, relating to any matters contained in this Final Judgment; and

2.  To interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

B.  Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendant shall submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.  If at the time information or documents are furnished by Defendant to the United States, Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under the Protective Order, then the United States shall give Defendant ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

# XI. Notification

A.  Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15

U.S.C. § 18a (the "HSR Act"), Defendant, without providing advance notification to the Antitrust Division, shall not directly or indirectly acquire any assets of or any interest, including any financial, security, loan, equity or management interest, in a person providing PRR Platforms in the United States during the term of this Final Judgment if the purchase price of such assets or interest exceeds $10,000,000.

B.      Such notification shall be provided to the Antitrust Division in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about PRR Platforms. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction.  If within the 30-day period after notification, representatives of the Antitrust Division make a written request for additional information, Defendant shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information.  Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII. No Reacquisition

Defendant may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIV.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

### XV.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

**IT IS SO ORDERED.**

Dated: December 2, 2014



HON. WILLIAM H. ORRICK
United States District Judge